Opinion op the Court.
* TíIIS is a bill filed by Samuel BiggerstafF, styled frequently in the record Samuel Riggerstaff, junior, against the heirs of John M'Jlhenny, setting up a certificate, survey and patent granted by the commissioners in pursuance of an act of the general assembly of this commonwealth, passed on the 10th day of February 1798, entitled “anací for encouraging and granting relief to settlers.” against an entry,purvey and patent under the laws of the state of Virginia. The certificate of the commissiouets, as certified by. the surveyor, is as follows:
“No. 532,-September 3, 1798 — We do hereby cer-> tify, that John Enyarl, jun. is entitled to two hundred acres of second rate land, by virtue of bis having improved the same agreeably to an act of the assembly, entitled “ an act for encouraging and granting relief to settlers,” and located as follows: On the north side of Cumberland river, on the bank, beginning at a beech and two sugar trees, running about eight poles above the mouth of a great gut tfiat puts into Cumberland river, and about'a quarter of a mile above a large lick that puts in on the south side of the river, and about four miles above the mouth ofMache’s creek, on a straight line; running thence S. 10 W. 180 poles, crossing the creek at 55 polea, to two beech trees; S. 88 E. 179 poles, to the bank of Cumberland river, tó, a walnut and three sugar trees; thence running up the river, binding on the same, to the beginning. The improvement is at the beginning corner.”^
A survey was executed on this certificate on the 27th of Ihe same month, including within it all the calls of the certificate, except that which mentions the improvement, that which states the distance from the mouth of Mache’s creek, and one line of the survey is one pole shorter than the distance named in the certificate ; huí the trees named at each corner are the same. A parent issued for the quantity on the same survey, dated the 25th of April 1815, to the complainant below, as assignee of Enyart. The patent on the military survey is elder, 'and the surveys thereof were executed only one day before that of the complainant, on his certificate; and the military claimants had previ-, ously obtained a judgment in ejectment; to enjoin which, this bill was brought.
and depose lions in ano-j_|le 0f appeals, ad-from’circum. stances strongly evi-parties in ihe court below had a-f^^shcmld' y
The court below sustained the claim of the complainant, perpetuated the injunction and decreed a convey-slice of the elder grant. From this decree the military claimants appealed.
; 1. It is now insisted; that there is not any proof of the calls of the appellee’s claim, which must first he tried; that all the depositions in'the causeare relevant only to the claim ‘ of the appellants, and therefore the decree is erroneous. This is literally true, with regard to the depositions copied into this record. Besides, there is no survey in the cause showing the existence or position of the objects described; and at the first appearance of the record, there is- no foundation for the decree. There is found, however, an agreement of record, of the September term 1816, which states, “ that on the motion and agreement of the parties aforesaid by their attorneys, it is ordered, that the survey made and returned in-, the foregoing cause and depositions ta-keñ in the same, shall be heard and read in evidence.” This agreement seems unmeaning; but when some words first written by the clerk and erased, though yet legible, are coupled with the unmeaning expressions of the order, they raise a presumptibn that the agreement is incomplete, and that something is omitted. Accordingly, on an inspection of the record of a case, heard at the same time, wherein Samuel BiggerstafF, styled Samuel Big-gerstafF, senior, is appellant, against the same defendants, an order in the same court, wherein the same military claim is in issue, and the same counsel concerned, and asserting another claim or claims originating under the laws of this country, an agreement is found, of June term 181,6, to this effect: “On the motion and agreement of the parties aforesaid, by their counsel, it is ordered, that the survey made' and returned in this cause,- or any one of the three cases of Biggerstaffs against MTlhennys, and all depositions taken and returned, shall be read as evidence in this or either of the aforesaid causes.” The cause in which this order appears was . decided at the same term, and an appeal prayed from the decree. There can, then, be no reasonable doubt, that the depositions and survey were used promiscuously in all the suits, to wit, these two and one in the name of Aaron BiggerstafF, against the same defendants. Accordingly, the caption of the depositions and style of the survey, making part of the record in the other *158 su^’ ^erins belong to this, as well as that; so that parts of one record are made out in the other. These facts and circumstances show that a certiorari ought to be awarded, for a correction of this record, unless we are warranted, from the evidence stated, in using the depositions and survey in the other record as part of this. The latter course, we conceive, is allowable, under the practice of this court, and we have therefore proceeded to consider this record, with these depositions and survey included, as taken from the other record.
thatisrequir-cd to render valid a settle-orfinatin™ under the*5 actofl798; c^arl^ncd' required.0
2. On examining the proof, there is no testimony resPec^ng the mouth of the creek called Mache’s creek, nor any testimony of that kind Which could fix the part of the river on which the claim was located; so that if the practicability of finding the claim by search is the test, it could not be discovered from this part of the evidence. There is, however, proof that Enyart improv-^an<^ ^et°re the date of his certificate, and that his improvement was known in the neighborhood. If this improving is to be taken to be such as the act of assembly requires, under which the claim was locáted, it is certain that notoriety might be presumed, from the residence of Enyart, according to repeated decisions of this court. But, unaccountably, in the language of the witnesses, as well as in that of the certificate, and other certificates of this kind, which have been before, this court, the word, “ improving” is used. This might be done either with or without settling on the land; whereas, actual settlement was what the acts required.
But a question here arises, of some importance to claims of this nature granted by commissioners: Is notoriety required, or is identity sufficient to give validity to, and sustain the claim? It is certain, that the doctrine of notoriety, with all its perplexing varieties, touching the settlement and pre-emption and treasury warrant claims in this state, which originated in the laws of Virginia, resulted from the peculiar requisites ..of that law, which required the claims to be so located; that others might find and avoid them. This doctrine may be also measurably, if not entirely applicable to claims originating with the county courts, under statutes directing their location similar to those of Virginia; but on examining the statute of this state, of i 7 9 8, under which this claim was located, as well as the *159 laws previous thereto, we discover no such requisition, and it was the intantiqn of the legislature to introduce a different system from that of Yirgiuia. The first act upon this subject, passed in 1795,2 Dig. L. K. 733, and required only that the court of commissioners should “ cause the claim .to be located, specially describing, the boundaries thereof” and the same was to be recorded with the surveyor. ■ This act was, however, of but short duration, and the commissioners béing appointed only for a limited period, were only authorised to hold two short terms. The next act passed the first of March 1797, 2 Dig. L. K. 736. This act, in like manner, only required that the claimants should prove and lay their claims before the court of commissioners, “ describing the bounds'1'’ thereof; and every claim was to be surveyed as nea^j|fcn a square as.^bfe interfering claims would admit off and. the location was in like manner to be recorded with the surveyor. This act was repealed by one passed on the 10th of February 1798, the one under which fhe present claim was granted, 2 Dig. L. K, 740., By this act, precisely the same requisites were required, with regard to the location, which were’ pre s'eribed by the act which it'repealed; and in neither of them is there the least requisition that the claim should be so located that others cpuld find it, but only that it should be identified by boundaries; and instead of requiring the first Ipcator so to enter, at his peril, that the true position of his claim could be found by notorious objects, it imposed upon subsequent locators the hazard of Iqss, if the first could identify his boundaries. Hence we conclude, that in this description of claims identity alone, without notoriety, is sufficient. The truth is, the legislature intended and directed that every claimant should be settled and residing on his claim at some particular period before, and at the date of his certificate ; and the present act required his residence to be continued for one year thereafter. No person could locate lands, except an actual settler and resident. Notoriety in such case could not, therefore, be necessary, but only the fixing and identifying the precise boundary ; and the neighbor on the next two hundred acres, was only to be cautious of the boundaries fixed by the first. Testing this claim by these principles, it is identified beyond doubt. Its boundaries are fixed, as re- *160 qúired by law, and the survey, made not thirty days af-terwards, pursues them precisely.
Although the actua?settlement on the land,, yet it is thatthecon? missioners' ceriificate totidem vn?' bis, that the same agroea-ofassembly0” [recitingthe title of the ficienq *the^~ improving shall be pro-sumecl an actual settle-settlement was included. If it states “ improving the ment.
3. The language of the certificate with regard to improving, instead of settling, may be supposed to excite some difficulty. Taking it, however, altogether, it must mean settling; because it certifies the right, “by virtue having improved the same agreeably to an act of assembly, entitled “ an act for encouraging and granting relief to settlers.” The certificate, therefore, as aSa*ns(: Ihe commonwealth, and all claiming under her by claims of subsequent date, must be taken as conclu-give that Enyart did settle the land and reside thereon, as ac* 0)^assembJy required, and that such improvement as the law directed was included at the beginning corner, as is held by this court in the case of Samuel Biggerstaff, sen. vs. M'Ilhenny’s heirs, just decided.
It cannot be necessary further to identifyihc improvement, in order to give figure to the survey; bé-cause the boundaries being’given all round, it is imma-Serial in what part the improvement is placed. Its position cannot control or alter the figure of the claim, Its boundaries are complete, by the other calls of the certificate. .
The question, then, must rest essentially on the validity of the entry set up by the defendants. It is in t}le name of John M’llhenny, for 1000 acres, and is , , , ,, j. , tj. ,, ,, r-. dated the 24th of February 1788. Its calls are, “ On the north side of Cumberland river, beginning at the upper end of the first large bottom, on said side of the river,'below said M’llhenny’s 1000 acre entry; thence down the river 600 poles on a straight line; thence at right angles from the general course of the river, so far as will include the quantity.”
The entry of 1000 acres in the name of M’llhenny, called for in this entry, was made on the same day, and calls to lie “ on the north side of the Cumberland river, beginning at the upper end of the first large bottom on said side, below William Reynolds’ entry of 1000 acres; ■thence down the river 520 poles on a straight line: thence at right angles from the general course of the river, so far as to include the quantity.”
The entry of William Reynolds is made on the same day, and calls to lie “ on Cumberland river,, beginning at the upper end of the first large bottom below his former entry of 1,666 2-3 acres, running down the riv *161 er, with the mednders,Go the enddtUhe bottom;' thence off $;om the ri&r a¿ right ángle's, so far as to include this quantity.” * ’
BythéVír¿ gima land of 1779, torsofrcvolu-tionary milfr iaiT claims, t^°0 ^™rü' them with the surveyor,-theVdicUlo so; the entries must. ^ precision re-qniredincase oí ontries rants™y wa*”
Here the chain ends’, and the entry of William Rey-holds for 1,666 2-3 ¿a not'filed. ' „
' 4. Opon exarnipn'g the acts of Virginia, reserving the lands in this state for military services in the revo-iutionary war, as well as the acts permitting them tobe surveyed, and directing the mode and manner thereof, no express provision is discovered, directing that entries thereof shall be specially made, or indeed that entries with the surveyor shall be made at all; so that the inquiry may be made, were such entries required by law, or is. the survey the commencement of the claim? And if an entry was to be made, must it be shown, like a Vir'ginia land-ófiicé treasury warrant entry, to be no-terious and special, before it can be sustained? This court, in previous decisions, have impliedly assumed an entry to be neqessary, and required both notoriety and identity, without recurring to the law which imposed these requisitions. ’ On examining this question, we disóover that the act of Virginia of 1779, under which settlements, jme-efnptioni and treasury warrants took their Original Litt. 410, the 161a section provides, that every person having a land warrant, founded on any of the before mentioned rights, aud being desirous of locating the samo on any waste and unappropriated lands, shall lodge such warrant with the chief surveyor of the county wherein the said lands, or the greater part of them, lie, who shall give a receipt for the same, if required. The party shall direct the location thereof so specially, that others may be enabled with certainty to locate other warrants on the adjacent residuum.”
When we examine to what kind of warrants these provisiohs apply, by looking back for what rights were “ before mentioned,” we discover that in the same section of fhe act, as well as the one next preceding, the military rights grantéd for revolutionary services, are named, and the mode of obtaining such warrants is pointed out. Hence, they are included in the provisions recited. And although, instead of the county surveyors, a territorial surveyor has been appointed for these claims, and many subsequent provisions have been adopted regulating them; yet, no where that we can. -discover, has the of took them from *162 the operation of tblljprovísioií of the.qct of 1779. if it were not for this provision, it'would b<? difficult to, find any law which authorised an' entry on sipfii military warrants, or that would make any' thing [pss than a survey or patent an act of appropriation; from which it would follow, that an entry on ÍU9J2 military Arrant, however special and valid, would córífer no title, either in law or equity. But by the act of 1779, these consequences are avoided"; and it follows, that an entry with the proper surveyor is an act of appropriation, and an e’quitable estate is thereby secured. But while validity is given to such an entry on military warrant, by this act, it demands of them all the requisites of a valid entry on treasury warrant; so that in determining on this entry, we are -not led along an untried way.
it will be at once perceived, that the appellants, in this instance, not having exhibited the foundation entry, which must fix the spot upon the river, at which we must commence counting the diiferexxt bottoms, has presented an insuperable difficulty in the way of supporting their entry, if its validity was contested generally. The only doubt that presents itself, is, whether, from the special issue in the cause, and what is shown by the-appellee, this entry ought not to he supported. The bill seems clearly to admit a valid entry somewhere; but contends that it is surveyed in the wrong ’bottom, and ought to have been surveyed much higher up the river; and to show this, the appellee has proved the bottom in which Reynolds’ survey of 1000 acres is made, and then attempts to show that by counting the bottoms downwards, the appellants could not occupy the bottom in question, hut one higher; and there is some doubt, whether, assuming the position of Reynolds as pointed out by the appellee, the appellants ought not to come • to the bottom occupied by the appellee. Is the appel-lee bound by the bottom he has shown as Reynolds’ bottom? The proof is sufficient to show that Reynolds’ survey is there; but we cannot -see, nor ought wc to presume, that it is the bottom in which the entry was made; and the appellants themselves, have failed to show that they have surveyed in the bottom' intended by the entry, which is the point in issue. The appellee contends that the survey ought to have been higher up the river. They allege the contrary. The appellee shows’, that counting from Reynolds’ survey, it may be plan's- *163 iblj&árgued .that the .claipa of the appellants is in the right b-ot^aj; but neither of tlm parties have shown that the survey is-*ih the right bottom, when counting from Remolds’ entry. Nothing, then, which the ap-pelfee.has provftt or shown,, can sustain tjie appellants’’ entry., , * *
Jfc is* contended in the answer, that the claim of the appellee was relinquished; and' to prove it, a relinquishment'is produced, signed by Samuel BiggerstafF, dated in J wag 1809, of 200 acres, on» the north side of Cumberland river, helpl by virtue of a certificate for settlement. In this description, the relinquishment agrees with the claim in question; but it is not stated what kind of.certificate, whether from commissioners or county court; It clpasply appears iri.the record, that there is-another Samflel Biggerstaff, who claims la’nd. Besides,, when the number of the certificate is given, it does not agree with the one now set up in this suit,; this being Nq. 532, and that No. 305. This is too great a disa-. greement, coupled with the other circumstances of uncertainty, to authorise us to decide that the claim of the appellee is relinquished; and upon the whole case, we perceive no error in the decree of the court below^ in-giving the5relief demanded.
Tlie decree must, therefijrc, be affirmed with costs.